1  RON BENDER (SBN 143364)
   J.P. FRITZ (SBN 245240)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
3  Los Angeles, California 90067
   Telephone: (310) 229-1234
4  Facsimile: (310) 229-1244
   Email: RB@LNBYB.COM; JPF@LNBYB.COM
5
6  Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

7

8              UNITED STATES BANKRUPTCY COURT
               NORTHERN DISTRICT OF CALIFORNIA
9                  SAN FRANCISCO DIVISION

10 In re:                              ) Case No. 15-31480
11                                      )
   MAGNOLIA BREWING COMPANY, LLC,       ) Chapter 11 Case
12 also doing business as McLean Breweries, )
                                        ) **Debtor's Emergency Motion for, and**
13     Debtor and Debtor in Possession. ) **Memorandum of Points and Authorities**
                                        ) **in Support of, Entry of Interim and Final**
14                                      ) **Orders:**
15                                      )
                                        ) **(I)   Authorizing Debtor to Use Cash**
16                                      )        **Collateral Pursuant to 11 U.S.C. §**
                                        )        **363;**
17                                      ) **(II)  Granting Adequate Protection to**
18                                      )        **Pre-Petition Secured Creditors**
                                        )        **Pursuant to 11 U.S.C. §§ 361, 363,**
19                                      )        **and 507;**
                                        ) **(III) Scheduling a Final Hearing**
20                                      )        **Pursuant to Fed.R.Bankr.P.**
                                        )        **4001(b); and**
21                                      ) **(IV)  Granting Related Relief**
22                                      )
                                        )
23                                      ) Date:  December 2, 2015
                                        ) Time:  9:30 a.m.
24                                      ) Place: U.S. Bankruptcy Court
                                        )        Courtroom 22
25                                      )        235 Pine St., 23rd Floor
                                        )        San Francisco, CA 94101
26                                      ) Judge: The Hon. Dennis Montali
27                                      )
28

Magnolia Brewing Company, LLC (also doing business as McLean Breweries), chapter 11 debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case (the "Debtor"), hereby respectfully submits this emergency motion (the "Motion") and memorandum of points and authorities in support of this Motion, pursuant to sections 105(a), 361, 3633, and 507 of title 11, sections 101 *et seq.* of the United States Code (the "Bankruptcy Code"), for the entry of interim and final orders authorizing the Debtor to use cash collateral, provide adequate protection to secured creditors, schedule a final hearing on this Motion, and grant related relief. This Motion is brought pursuant to B.L.R. 9029-1, and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). In support of this Motion, the Debtor respectfully represents as follows:

## INTRODUCTORY STATEMENT

The Debtor seeks immediate Court authority to use cash collateral in order to avoid a shutdown of its valuable business and remain operational while it seeks to reorganize through a confirmed chapter 11 plan of reorganization or consummate a going-concern sale of its business pursuant to section 363 of the Bankruptcy Code. The Debtor owns and operates two valuable and profitable restaurants and breweries in San Francisco and employs approximately 100 people.

The purpose of the Debtor's request for use of cash collateral is to continue to operate and pay the expenses that are necessary to pay to avoid immediate and irreparable harm, including, but not limited to, payroll, rent, utilities, and trade debt to vendors to continue operating the Debtor's two restaurants and breweries as going-concern businesses, as set forth in the budget (the "Budget") attached as Exhibit "1" to the concurrently filed Declaration of John Appel. The Debtor seeks use of cash collateral for the duration of the Budget, for no less than five (5) weeks. The Budget and use of cash collateral is not on any negotiated, stipulated, or "uncontested" terms with the Debtor's secured creditors.

By way of summary, the Debtor has three prepetition secured creditors with properly recorded UCC-1 financing statements consisting of the following: (i) approximately $1,310,000 of secured debt owing to Union Bank secured by substantially all of the Debtor's assets; (ii) approximately $43,000 of secured debt owing to OBDC Small Business Finance ("OBDC") secured by substantially all of the Debtor's assets; and (iii) approximately $223,000-$300,000 of secured debt owing to Fora Financial West ("Fora") secured by certain assets of the Debtor (each a "Secured Creditor" and collectively, the "Secured Creditors"). UCC-1 financing statements filed with the Secretary of State for the State of California are attached as Exhibit "1" to the concurrently filed Declaration of John-Patrick M. Fritz, Esq. Additionally, the Debtor has two delivery trucks secured by loans from Ford Credit and Lee Financial Services (collectively, the "Vehicle Creditors").

The Debtor believes that it has substantial value as a going concern, with value well in excess of the total amount of the Debtor's secured debt. The Debtor believes that each of the Secured Creditors is secured by a significant equity cushion as the Debtor believes that its assets are worth well in excess of the amount of the aggregate secured debt. Additionally, the Debtor's business is profitable, and the Debtor proposes to make interest-only payments to the Secured Creditors as a form of further adequate protection, as set forth in the Budget. Furthermore, to the extent that these measures do not protect the Secured Creditors against any post-petition diminution in the value of their collateral, they will receive a super-priority administrative claim pursuant to section 507(b) of the Bankruptcy Code, which provides them with yet another form of adequate protection.

The Debtor submits that this Motion does not request any relief that might be considered disfavored by the Court's Guidelines for Cash Collateral and Financing Motions and Stipulations (Effective 1/1/2006). Moreover, the Debtor submits that this Motion does not request any relief

related to the enumerated categories of Bankruptcy Rule 4001(c). The Budget includes a line item for $5,000 per month for the Debtor's bankruptcy counsel, but this is only a line item, not a carve-out. The Debtor proposes to open a separate debtor-in-possession bank account into which the Debtor proposes to deposit $5,000 on a monthly basis simply as a basis to help budget for the payment of professional fees (recognizing that this is not intended to be an estimate on the actual fees to be incurred or any kind of cap on such fees).

The Debtor has no ability to continue to operate and preserve its business unless the Court enters an interim order, on an emergency basis, to permit the Debtor to use its current and future revenue to pay its operating expenses, including payroll, utilities, insurance, maintenance, and rent. In order for the Debtor to be able to operate its business while in Chapter 11 and to avoid immediate and irreparable harm to its business and estate, the Debtor must be able to use (a) all of its cash existing on the petition date of November 30, 2015 plus (b) all of the Debtor's post-petition revenue generated from the operation of its business to pay the Debtor's post-petition operating expenses in accordance with the Budget, any Court orders and as otherwise set forth herein.

In addition to those expenses set forth in the Budget, the Debtor also seeks Court authority to use cash collateral to pay for the following: (a) all quarterly fees owing to the Office of the United States Trustee and all expenses owing to the Clerk of the Bankruptcy Court; and (b) all actual third-party, outside expenses incurred by the Debtor (or its counsel) directly related to the administration of the Debtor's bankruptcy estate (for items such as photocopying, postage, searches, etc.), not to exceed the total sum of $5,000 per month. In addition, the Debtor seeks authority to deviate from the line items contained in the Budget by not more than 15%, on both a line-item and aggregate basis. Finally, because the Debtor is a purveyor of food and beverage, it is possible (and hopeful) that the Debtor's actual business level and therefore revenue will be higher than projected

in the Budget, in which case the Debtor would need to spend proportionally more on food and beverage to serve this increased volume. As with any restaurant, it is not possible for the Debtor to project with exact certainty the level of business it will do over any period of time. The Debtor can only provide a reasonable estimate based upon all known facts and circumstances. As a result, to the extent the Debtor's actual business level and therefore revenue turn out to be higher than projected in the Budget, the Debtor requests Court authority to increase the amount of its variable cost items related to food and beverage on a proportional basis.

A proposed form of order is attached as Exhibit "1" hereto.

## CERTIFICATION

The undersigned certifying professional has read the accompanying Motion and introductory statement set forth above, and, to the best of my knowledge, information and belief, formed after reasonable inquiry, the terms of the relief sought in the Motion are in conformity with the Court's Guidelines for Cash Collateral and Financing Motions and Stipulations. I understand and have advised the Debtor that the Court may grant appropriate relief if the Court determines that a material element of the Motion was not adequately disclosed in the introductory statement.

WHEREFORE, the Debtor respectfully requests that the Court:

(1)     grant the Motion as requested herein on an interim basis.

(2)     find that adequate notice of the Motion has been provided.

(3)     authorize the Debtor to use cash collateral on an interim basis as set forth in the Budget with a deviation of up to 15% on an aggregate and line item basis.

(4)     authorize the Debtor to increase the amount of its variable cost items related to food and beverage on a proportional basis if the Debtor's actual business level and therefore revenue are higher than projected in the Budget.

1    (5)    schedule a final hearing to consider the relief requested in the Motion.

2    (6)    waive any applicable stay, including under Bankruptcy Rule 4001(b), and provide

3    for the immediate effectiveness of the interim order; and

4    (7)    grant such other and further relief as is appropriate under the circumstances of this

5    case.

6

7    Dated: November 30, 2015                MAGNOLIA BREWING COMPANY, LLC

8
                                    By:    */s/ Ron Bender*
9                                          RON BENDER
                                           JOHN-PATRICK M. FRITZ
10                                         LEVENE, NEALE, BENDER, YOO
                                           & BRILL L.L.P.
11                                         Proposed Attorneys for Chapter 11 Debtor
                                           and Debtor in Possession
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF FACTS

### A. Background

1. The Debtor filed a voluntary petition under Chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on November 30, 2015 (the "Petition Date"). The Debtor continues to operate its business, manage its financial affairs and administer its bankruptcy estate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. The Debtor, its business and its bankruptcy estate are being managed by a newly hired (approximately six months ago), highly competent and skilled professional who has no equity ownership in the Debtor – the details of which are explained in the concurrently filed Declaration of John Appel, who has been designated to be (and who has agreed to serve as) the responsible individual in this case.

### B. The Debtor's Business, Assets and Liabilities

2. The Debtor owns and operates a 30-barrel production brewery located at 3rd and 22nd in San Francisco, California, which was first opened in 2014, as well as an adjacent restaurant, Smokestack. The Debtor also owns the Magnolia Pub and Brewery located at Haight and Masonic in San Francisco as a result of the Debtor's acquisition of those assets from McLean Breweries, Inc. ("McLean") pursuant to a merger between the Debtor and McLean, which occurred in January, 2015. Before the merger, the Debtor and McLean had common management and a number of common employees and substantially similar ownership.

3. The Smokestack Restaurant is a modern American gastro-pub serving the highest quality barbeque, a full line of beers from the Magnolia Brewery, and a full bar with signature cocktails and one of the best selection of fine and rare bourbons and rye whiskies in San Francisco. The Smokestack Restaurant offers a full-service menu, but with a focus on meat, and the brisket is the specialty that has gained wide popularity and praise with diners in San

Francisco, while the bar and its signature cocktails and craft beers have earned high marks and a following. With butcher-block long communal tables and a rustic chic décor, the restaurant presents an impressive space that seats and serves up to 100 guests. In addition to the restaurant and bar, the loading dock to the brewery provides a casual event space for group events that is highly popular. Located in a bustling and hip neighborhood of San Francisco, the Smokestack Restaurant and related brewery enjoy a busy and robust business from clientele in the local neighborhood and the nearby University of California San Francisco campus.

4.     The Magnolia Pub and Brewery is located in the bustling Haight Ashbury district, serving a full menu that prides itself on local, sustainable, fresh, and high quality ingredients. The brewery offers a wide selection of its own craft brews served in 20-ounce imperial pints at cellar temperatures. The Magnolia Pub and Brewery is filled with dimly lit booths across large windows in a classic late Nineteenth-Century building, providing an equally intimate and open dining atmosphere for guests.

5.     Over the last 18 years, Magnolia Brewing Company has developed an award-winning portfolio of balanced and nuanced beers and established itself as one of San Francisco's leading craft breweries. The Magnolia Pub and Brewery operates a 7-barrel brewing system used to produce its smaller-batch specialty beers consumed primarily in its restaurants. The Brewery adjacent to Smokestack is a 30-barrel modern production brewery used to produce its higher volume craft beers that are sold both in its restaurants and in over 250 draft beer accounts in the San Francisco Bay Area.

6.     Both of the Debtor's locations are leased pursuant to unexpired commercial real property leases and subject to multiple options to extend for years at a time.

7.     With its popularity and business holding strong, the Debtor projects generating total annual revenue of approximately $7.5 million, with total annual operating expenses of

approximately $6.9, which means the Debtor projects generating total annual positive cash flow of approximately $600,000.

8.    The Debtor has secured debts of approximately $1.7 million, as discussed in greater detail below. The Debtor believes that it also has a total of approximately $2.5 million of unsecured debt (comprised of a combination of primarily trade debt and note holders), and the Debtor believes that it has a total of approximately $1.05 million of outstanding tax debt (inclusive of the debt owing to the California Employment Development Department described below and before including interest and penalties). In total, the Debtor has approximately $5.25 million of prepetition debts.

9.    The Debtor believes it has a successful business now based on two busy operating restaurant locations with an established business model, menu, and beer and cocktail offering with an established reputation and clientele. As indicated above, the Debtor projects that with its current configuration and new management, it will generate approximately $600,000 of annual positive cash flow, which the Debtor believes will form the basis upon which the Debtor will be able to successfully reorganize and emerge from chapter 11 pursuant to a confirmed plan of reorganization (although the Debtor is keeping all options open, including, but not limited to, the sale of the business as a going-concern).

## C.    The Debtor's General Asset Base and Secured Debt Description

10.    The Debtor's assets are comprised mainly of its two restaurant and brewery locations, including the two unexpired commercial real property leases, furniture, fixtures, perishables, stores, goods, liquor, liquor licenses, intellectual property, and good will. Because the customers' bills are paid immediately with cash or credit cards (with nearly 100% payment rate), the Debtor does not have a meaningful "accounts receivable" ledger to consider an asset. The Debtor is owed approximately $600,000 from Reprise, LLC, an entity with some (but not

100%) common ownership with the Debtor. The figure is comprised of approximately $300,000 used for the buildout of Reprise's restaurant, The Alembic. Approximately $200,000 is for reimbursement and management fees owed to the Debtor for management. Approximately $100,000 is an account receivable for beer supplied to The Alembic. The Debtor believes that Reprise is insolvent. Under its new management led by Mr. Appel, the Debtor is investigating the most appropriate action to take with respect to Reprise to maximize the benefit of the Debtor's estate, including possible negotiating a settlement and repayment plan from Reprise. The payable owing from Reprise accrued before Mr. Appel became a responsible party for the Debtor. If a resolution is reached between the Debtor and Reprise, the Debtor will come before this Court and seek this Court's approval of such resolution before implementing it.

11. The Debtor has approximately $1,310,000 of secured debt owing to Union Bank preceding the merger and that debt owing to Union Bank appears to be secured by substantially all of the Debtor's assets. The Debtor has approximately $43,000 of secured debt owing to OBDC preceding the merger and that debt owing to OBDC appears to be secured by substantially all of the Debtor's assets. The Debtor has approximately $225,000-$300,000 of secured debt owing to Fora Financial West, which was debt that was previously owed by McLean preceding the merger, and that debt owing to Fora Financial West appears to be secured by certain assets of the Debtor. These three creditors comprise the Secured Creditors and what the Debtor believes to be its valid secured debt (though the Debtor reserves all rights to challenge the liens and debts should it learn of anything that would merit such challenge).

12. The Debtor does not believe that it owes any money to Yellowstone Capital West, which was debt that was previously owed by McLean preceding the merger, despite the fact that the UCC-1 financing statement filed by Yellowstone Capital West has not been terminated. The Debtor does not believe that it owes any money to Cap Call, which was debt that was previously

owed by McLean preceding the merger, despite the fact that the UCC-1 financing statement filed by Cap Call has not been terminated. There are two tax liens recorded by the California Employment Development Department, which the Debtor believes are related to unpaid payroll taxes and related tax payment obligations, but the Debtor does not know how much of its unpaid taxes pertain to the recorded tax liens of the California Employment Development Department. There are also two recorded liens filed by Corporation Services Company, as Representative, but the Debtor does not know what secured debt, if any, those pertain to. A true and correct copy of the UCC-1 financing statement and search results for the Debtor are attached as Exhibit "1" to the concurrently filed declaration of John-Patrick M. Fritz, Esq.

13.     Additionally, the Debtor has two delivery trucks secured by loans from Ford Credit and Lee Financial Services (collectively, the "Vehicle Creditors").

14.     The cash generated by the Debtor's business appears to be the cash collateral of the Secured Creditors.

**D.    The Debtor's Need for Immediate Use of Cash Collateral**

15.     The Debtor has no ability to continue to operate and preserve its business as a going concern unless the Debtor has the ability to use its current cash and future revenue generated by its business to pay its operating expenses, including payroll, utilities, insurance, upkeep and maintenance, and rent. Accordingly, the Debtor must be able to use: (i) all of its cash existing on the Petition Date plus (ii) the Debtor's post-petition revenue generated from the operation of its business to pay the Debtor's post-petition operating expenses in accordance with the Budget attached as Exhibit "1" to the concurrently filed Declaration of John Appel.

16.     The Budget contains the expenses the Debtor believes must be paid in order for the Debtor to operate and preserve the value of its business and to enable the Debtor to avoid immediate and irreparable harm to its bankruptcy estate. In addition to those expenses set forth

in the Budget, the Debtor also seeks authority to use cash collateral to pay for the following: (a) all quarterly fees owing to the Office of the United States Trustee and all expenses owing to the Clerk of the Bankruptcy Court; and (b) all actual third-party, outside expenses incurred by the Debtor (or its counsel and financial advisors) directly related to the administration of the Debtor's bankruptcy estate (for items such as photocopying, postage, searches, etc.), not to exceed the total sum of $5,000 per month. In addition, the Debtor seeks authority to deviate from the line items contained in the Budget by not more than 15%, on both a line-item and aggregate basis.

Finally, because the Debtor is a purveyor of food and beverage, it is possible (and hopeful) that the Debtor's actual business level and therefore revenue will be higher than projected in the Budget, in which case the Debtor would need to spend proportionally more on food and beverage to serve this increased volume. As with any restaurant, it is not possible for the Debtor to project with exact certainty the level of business it will do over any period of time. The Debtor can only provide a reasonable estimate based upon all known facts and circumstances. As a result, to the extent the Debtor's actual business level and therefore revenue turn out to be higher than projected in the Budget, the Debtor requests Court authority to increase the amount of its variable cost items related to food and beverage on a proportional basis.

17.     Although the Budget shows a slight decrease in cash position over its five-week span, the decrease is due to a short seasonal decline in business in December and an upfront payment for cost of goods in the amount of approximately $8,000 to brew beer but which will last into the extended future. The Debtor expects to be cash flow positive after January 1, 2016 on account of a seasonal increase in restaurant business and expansion of beer distribution.

18.     Given the Debtor's historical and current operating performance and the fact that the going-concern value of the Debtor's business would be decimated if the Debtor was forced to shut down, the Debtor submits that the Secured Creditors are clearly adequately protected and

substantially benefited by the Debtor's continued operation of its business and use of cash collateral.

19. The Debtor's assets are valued at least $3.0 million, while the Secured Creditors' claims total only $1.3 million. This translates to an equity cushion of over 90% in total and of much greater equity cushions calculated on an individual creditor basis, as demonstrated in the table below:

| Creditor | Debt | Equity Cushion | Percentage |
|---|---|---|---|
| Union Bank | $1,310,000.00 | $1,690,000.00 | 129.01% |
| OBDC | $43,000.00 | $1,647,000.00 | 3830.23% |
| Fora Financial | $223,000.00 | $1,424,000.00 | 638.57% |
| Total | $1,576,000.00 | $1,424,000.00 | 90.36% |
| | | | |
| Asset Base | $3,000,000.00 + | | |

20. The equity cushions more than adequately protect each of the Secured Creditors for the use of cash collateral. Nonetheless, in order to provide the Secured Creditors with adequate protection against any potential post-petition decline in the value of collateral, the Debtor proposes to make monthly interest-only payments to the Secured Creditors, as set forth in the Budget. Additionally, the Debtor proposes to pay the Vehicle Creditors regular monthly payments on the vehicle loans in the regular course. Finally, to the extent that these measures do not protect the Secured Creditors against any post-petition diminution in the value of its collateral, they will receive super-priority administrative claims pursuant to section 507(b) of the Bankruptcy Code, which provides them with yet another form of adequate protection.

21. Pursuant to Bankruptcy Rule 4001(b)(2), while the Court cannot conduct a final hearing on this Motion earlier than fourteen (14) days after service of this Motion, the Court may conduct a preliminary hearing before such fourteen-day period expires to enable the Debtor to use

cash collateral as is necessary to avoid immediate and irreparable harm to the Debtor's estate pending a final hearing. The Debtor must be able to pay expenses in accordance with the Budget and the other manners described above pending a final hearing in order to avoid immediate and irreparable harm to the Debtor's business and this bankruptcy estate.

## II. DISCUSSION

### A. The Debtor Must Be Authorized to Use Cash Collateral to Operate, Maintain and Preserve Its Business in Accordance with the Budget and the Other Manners Described Above

The Debtor's use of property of its estate is governed by section 363 of the Bankruptcy Code. Section 363(c)(l) provides in pertinent part:

> If the business of the debtor is authorized to be operated under section. . .1108. . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. §363(c)(l). A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363. See 11 U.S.C. §1107(a).

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest. . . ." 11 U.S.C. §363(a). Section 363(c)(2) establishes a special requirement with respect to "cash collateral," providing that the trustee or debtor in possession may use "cash collateral" under subsection (c)(l) if:

> (A)    each entity that has an interest in such cash collateral consents; or
> (B)    the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

See 11 U. S.C. §363(c)(2)(A) and (B).

It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral for the purpose of maintaining and operating its property. 11 U.S.C. § 363(c)(2)(B); In re Oak Glen R-Vee, 8 B.R. 213, 216 (Bankr.C.D.Cal.1981); In re Tucson Industrial Partners, 129 B.R. 614 (9th Cir.B.A.P.1991). In addition, where the debtor is operating a business, it is extremely important that the access to cash collateral be allowed in order to facilitate the goal of reorganization: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business." In re Dynaco Corporation, 162 B.R. 389 (Bankr.D.N.H.1993), quoting In re Stein, 19 B.R. 458, 459. (Bankr.E.D.Pa.1982).

The only sources of revenue available to the Debtor to use to operate, maintain and preserve its business are the Debtor's cash existing on the Petition Date and the Debtor's post-petition operating revenue. As a result, the Debtor has no ability to continue to operate its business and maintain and preserve the going-concern value of its business unless the Debtor has immediate access to and use of its cash to pay the Debtor's ordinary operating expenses, including, but not limited to, payroll, utilities, insurance, equipment maintenance, and rent.

The expenses the Debtor currently projects that it must be able to pay from the Petition Date through the next five weeks are those expenses set forth in the Budget. The Debtor's inability to pay those expenses would cause immediate and irreparable harm to the Debtor, its business and this bankruptcy estate. Indeed, the Debtor's inability to pay such basic and critical operating expenses such as payroll, utilities, insurance, and rent would result in the immediate closure of the Debtor's business, termination of approximately 100 jobs, the loss of the Debtor's good will, intellectual property, and well-regarded standing and reputation with dining clientele, and the decimation of the substantial overall going-concern value of the Debtor's business.

In addition to those expenses set forth in the Budget, the Debtor also seeks authority to use cash collateral to pay for the following: (a) all quarterly fees owing to the Office of the United States Trustee and all expenses owing to the Clerk of the Bankruptcy Court; and (b) all actual third-party, outside expenses incurred by the Debtor (or its counsel) directly related to the administration of the Debtor's bankruptcy estate (for items such as photocopying, postage, searches, etc.), not to exceed the total sum of $5,000 per month. In addition, the Debtor seeks authority to deviate from the line items contained in the budget by not more than 15%, on both a line item and aggregate basis. Finally, because the Debtor is a purveyor of food and beverage, it is possible (and hopeful) that the Debtor's actual business level and therefore revenue will be higher than projected in the Budget, in which case the Debtor would need to spend proportionally more on food and beverage to serve this increased volume. As with any restaurant, it is not possible for the Debtor to project with exact certainty the level of business it will do over any period of time. The Debtor can only provide a reasonable estimate based upon all known facts and circumstances. As a result, to the extent the Debtor's actual business level and therefore revenue turn out to be higher than projected in the Budget, the Debtor requests Court authority to increase the amount of its variable cost items related to food and beverage on a proportional basis.

**B.** **The Secured Creditors Are Adequately Protected by the Debtor's Continued Use of Cash Collateral, Proposed Payments, and Super-Priority Administrative Claim**

To the extent that an entity has a valid security interest in the revenues generated by property, those revenues constitute "cash collateral" under Section 363(a) of the Bankruptcy Code. Pursuant to Section 363(c)(2), the Court may authorize the debtor to use a secured creditor's cash collateral if the secured creditor is adequately protected. In re Mellor, 734 F.2d 1396, 1400 (9th Cir.1984). See also In re O'Connor, 808 F.2d 1393, 1398 (10th Cir.1987); In re McCombs Properties VI, Ltd., 88 B.R. 261, 265 (Bankr.C.D.Cal.1988) ("McCombs").

Pursuant to the Supreme Court case of United Savings Association v. Timbers of Inwood Forest Associates, 108 S.Ct. 626, 629 (1988) ("Timbers") and subsequent case law, the property interest that a debtor must adequately protect pursuant to sections 361(1) and (2) of the Bankruptcy Code is only the value of the lien that secures the creditor's claim. 108 S.Ct. at 630. See also McCombs, Id., at 266. Section 506(a) "limit[s] the secured status of a creditor (i.e., the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral." McCombs, at 266.

In the case of an oversecured creditor, Section 506(a) and Timbers mandate that "there is no lack of adequate protection [even where there is] a decline in collateral value" provided the secured creditor remains oversecured. McCombs, Id., at 266; In re Chauncy Street Assoc. Ltd. Partnership, 107 B.R. 7, 8 (Bankr.D.Mass.1989). Here, each of the Secured Creditors are adequately protected by a substantial equity cushions, as demonstrated in the table below:

| Creditor | Debt | Equity Cushion | Percentage |
|----------|------|----------------|------------|
| Union Bank | $1,310,000.00 | $1,690,000.00 | 129.01% |
| OBDC | $43,000.00 | $1,647,000.00 | 3830.23% |
| Fora Financial | $223,000.00 | $1,424,000.00 | 638.57% |
| Total | $1,576,000.00 | $1,424,000.00 | 90.36% |
| | | | |
| Asset Base | $3,000,000.00 + | | |

Additionally, each of the Secured Creditors is adequately protected by the Debtor's continuation of its business as a going concern and maintenance of the collateral. The preservation of the value of a secured creditor's lien is sufficient to provide adequate protection to a secured creditor when a debtor seeks to use cash collateral. In re Triplett, 87 B.R. 25 (Bankr.W.D.Tex.1988). See also In re Stein, 19 B.R. 458 (Bankr.E.D.Pa.1982). Therefore, the

very use of cash collateral to run the Debtor's business is itself adequate protection for the Secured Creditors.

Furthermore, in determining adequate protection, Courts have stressed the importance of promoting a debtor's reorganization. In In re O'Connor, supra, the Tenth Circuit stated:

> In this case, Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the ultimate goal of Chapter 11. Hence, the Debtor's efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end. Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration.

808 F.2d at 1937.

While not required to do so as the above-described law makes clear, as additional adequate protection to the Secured Creditors, the Debtor proposes to pay monthly interest-only payments to the Secured Creditors, as set forth in the Budget. Finally, to the extent that this payment does not protect the Secured Creditors against any post-petition diminution in the value of their collateral, the Secured Creditors will receive super-priority administrative claims pursuant to section 507(b) of the Bankruptcy Code, which provides them with yet another form of adequate protection.

The Debtor cannot preserve the going-concern value of its business or maintain the collateral and business unless the Debtor is able to use its cash collateral to pay for its operating expenses and the other purposes identified herein. Without use of the cash collateral to operate the Debtor's business, the Debtor will be forced to shut down its operations and terminate 100 employees and the substantial going-concern value of the Debtor's business will be lost. Such a

18

result would be catastrophic. Therefore, the Debtor urges the Court to grant this Motion and allow the Debtor to use cash collateral in accordance with the Budget and the other manners described above.

## C.    The Procedural Requirements Regarding Approval of this Emergency Motion Have Been Satisfied

Pursuant to Bankruptcy Rule 4001(b)(1)(C), the Debtor is required to serve a copy of the Motion on any entity with an interest in the Debtor's cash collateral, the 20 largest unsecured creditors, and any other entity that the Court directs. The Debtor has complied with the foregoing by serving a copy of the Motion by email, facsimile, and/or overnight mail on all secured creditors, the 20 largest unsecured creditors as defined by Rule 1007(d) of the Federal Rules of Bankruptcy Procedure, the United States Trustee, and parties requesting special notice.

## III.    CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court:

(1)    grant the Motion as requested herein on an interim basis.

(2)    find that adequate notice of the Motion has been provided.

(3)    authorize the Debtor to use cash collateral on an interim basis as set forth in the Budget with a deviation of up to 15% on an aggregate and line item basis.

(4)    authorize the Debtor to increase the amount of its variable cost items related to food and beverage on a proportional basis if the Debtor's actual business level and therefore revenue are higher than projected in the Budget.

(5)    schedule a final hearing to consider the relief requested in the Motion.

(6)    waive any applicable stay, including under Bankruptcy Rule 4001(b), and provide for the immediate effectiveness of the interim order; and

1    (7)    grant such other and further relief as is appropriate under the circumstances of this

2  case.

3

4  Dated: November 30, 2015                    MAGNOLIA BREWING COMPANY, LLC

5                                      By:    */s/ Ron Bender*
                                             RON BENDER
6                                            JOHN-PATRICK M. FRITZ
                                             LEVENE, NEALE, BENDER, YOO
7                                            & BRILL L.L.P.
                                             Proposed Attorneys for Chapter 11 Debtor
8                                            and Debtor in Possession

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit 1**

1  RON BENDER (SBN 143364)
   J.P. FRITZ (SBN 245240)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
3  Los Angeles, California 90067
   Telephone: (310) 229-1234
4  Facsimile: (310) 229-1244
   Email: RB@LNBYB.COM; JPF@LNBYB.COM
5
6  Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

7

8                    UNITED STATES BANKRUPTCY COURT
                      NORTHERN DISTRICT OF CALIFORNIA
9                        SAN FRANCISCO DIVISION

10 In re:                                    ) Case No. 15-31480
                                             )
11 MAGNOLIA BREWING COMPANY,                 ) Chapter 11 Case
12 LLC,                                       )
                                             )
13 also doing business as McLean Breweries,  ) **Interim Order:**
                                             )
14          Debtor and Debtor in Possession  )  **(I)  Authorizing Debtor to Use Cash**
                                             )       **Collateral Pursuant to 11 U.S.C. §**
15                                            )       **363;**
                                             )  **(II) Granting Adequate Protection to**
16                                            )       **Pre-Petition Secured Creditors**
                                             )       **Pursuant to 11 U.S.C. §§ 361, 363,**
17                                            )       **and 507;**
                                             )  **(III) Scheduling a Final Hearing**
18                                            )       **Pursuant to Fed.R.Bankr.P.**
                                             )       **4001(b); and**
19                                            )  **(IV) Granting Related Relief**
20                                            )
                                             )
21                                            ) Date:  December 2, 2015
                                             ) Time:  9:30 a.m.
22                                            ) Place: U.S. Bankruptcy Court
23                                            )        Courtroom 22
                                             )        235 Pine St., 23rd Floor
24                                            )        San Francisco, CA 94101
                                             ) Judge: The Hon. Dennis Montali
25                                            )
                                             )
26                                            )
                                             )
27                                            )

28

1

On December 2, 2015, commencing at 9:30 a.m., the Court held a hearing to consider the *Debtor's Emergency Motion for, and Memorandum of Points and Authorities in Support of, Entry of Interim and Final Orders: (I) Authorizing Debtor to Use Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection to Pre-Petition Secured Creditors Pursuant to 11 U.S.C. §§ 361, 363, and 507; (III) Scheduling a Final Hearing Pursuant to Fed.R.Bankr.P. 4001(b); and (IV) Granting Related Relief* (the "Motion") [docket entry no.___] filed by Magnolia Brewing Company, LLC (also doing business as McLean Breweries) (the "Debtor"), the chapter 11 debtor and debtor in possession in the above-captioned bankruptcy case.

The Court, having considered the Motion, the declaration of John Appel [docket entry no. ___] and the budget (the "Budget") annexed thereto and filed in support of the Motion, all documents filed in support of the Motion, the statements and arguments of counsel for the Debtor made on the record at the hearing, and the entire record in this case, including any opposition asserted to the Motion, and the Court, having found that notice of the Motion was proper under the Local Bankruptcy Rules, the Federal Rules of Bankruptcy Procedure, and the Bankruptcy Code, and having determined that the approval of the Motion on an emergency basis is necessary and proper to avoid immediate and irreparable harm to the Debtor and its estate, and for other good cause appearing,

**HEREBY ORDERS AS FOLLOWS:**

1. The Motion is granted on an interim basis.

2. The Debtor is authorized to use cash collateral on an interim basis as set forth in the Budget with a deviation of up to 15% on an aggregate and line item basis.

3. The Debtor is authorized to increase the amount of its variable cost items related to food and beverage on a proportional basis if the Debtor's actual business level and therefore revenue are higher than projected in the Budget.

1    4.    Any applicable stay, including under Bankruptcy Rule 4001(b), is waived and the

2    relief in this interim order is effective immediately.

3    5.    A final hearing on the Motion is set for _____, 2015, at __:___ _.m.

4

5                                    *End of Order*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **Debtor's Emergency Motion For, And Memorandum Of Points And Authorities In Support Of, Entry Of Interim And Final Orders: (I) Authorizing Debtor To Use Cash Collateral Pursuant To 11 U.S.C. § 363; (II) Granting Adequate Protection To Pre-Petition Secured Creditors Pursuant To 11 U.S.C. §§ 361, 363, And 507; (III) Scheduling A Final Hearing Pursuant To Fed.R.Bankr.P. 4001(B); And (IV) Granting Related Relief** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 28, 2014, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

$\boxtimes$ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On November 30, 2015, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

$\square$ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on November 30, 2015, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via email and/or overnight mail as indicated on the attached service list

Via Overnight Mail to:
The Honorable Judge Montali
United States Bankruptcy Court – San Francisco Division
235 Pine Street, 19th Floor
San Francisco, CA 94104

$\boxtimes$ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 30, 2015 | Jason Klassi | /s/ Jason Klassi |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Case: 15-31480    Doc# 4    Filed: 11/30/15    Entered: 11/30/15 22:19:12    Page 25 of 28

**F 9013-3.1.PROOF.SERVICE**

**15-31480 Notice will be electronically mailed to:**

Ron Bender on behalf of Debtor Magnolia Brewing Company, LLC
rb@lnbyb.com

Office of the U.S. Trustee / SF
USTPRegion17.SF.ECF@usdoj.gov, ltroxas@hotmail.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Case: 15-31480   Doc# 4   Filed: 11/30/15   Entered: 11/30/15 22:19:12   Page 26 of 28

June 2012

F 9013-3.1.PROOF.SERVICE

Elisabeth & Robert Rix
Attn: Betsy Rix
118 Comstock Road
Woodside, CA 94062
Phone: (650) 743-3401
E-mail betsyrix@gmail.com

David Reifsnyder & Jeri Beltman
Attn: David Reifsnyder
1246·King Drive
El Cerrito, CA 94530
Phone: (510) 237-8889
E-mail reifsnyder.david@gene.com

Thomas Skibo
30 Ashbury Ter
San Francisco, CA 94117
Phone: (415) 504-6773
E-mail thomasskibo@yahoo.com

BiRite
Attn: Judith Duppman
123 S. Hill Drive
Brisbane, California 94005
Phone: 415-656-0187 ext 341
E-mail jduppman@birite.com

Alfa Laval, Inc.
Attn: Ashok Shrivastava
PO BOX 123227
Dallas, Texas 75312-3227
Phone: 215 443 4293
E-mail ashok.shrivastava@alfalaval.com

Brewers Supply Group
Attn: VERONICA THOMSON
PO Box 74769
Chicago, Illinois 60694-4769
Phone: 952-465-0576
E-mail vthomson@bsgcraft.com

Asia International, Inc.
Attn: Dianne Reyburn-Vigil
851 Burlway Rd
Suite 306
Burlingame, California 94010
Phone: 949-269-2331
E-mail dianne@asiainternationalinc.com

Peter Watler & Daphne Feng
Attn: Peter Watler
235 Berry St. #609
San Francisco, CA 94158
Phone: (415) 235-1911
E-mail pwatler@yahoo.com

Eric Heath
1531 Spring Drive
Wichita, KS 67208
Phone: (415) 572-0088
E-mail p200eric@yahoo.com

LoanMe, Inc.
Attn: Jamil Albeitawi
1900 S. State College Boulevard
Suite 300
Anaheim, CA 92806
Phone: 949-535-7052
E-mail jamil.albeitawi@loanme.com

Kevin Landwehr
Nothing Something
1994 Hayes Street
San Francisco, CA 94117
Phone: (646) 221-9972
E-mail: whatisit@nothingsomething.com

Statco Engineering
Attn: Kris Stover
7595 Reynolds Circle
Huntington Beach, California 92647
Phone: 714-375-6300
E-mail kstover@statco-dsi.com

Country Malt, divsion of Great Western
Malting Co.
Attn: Tara Carrol
2488 Baumann Avenue
San Lorenzo, California 94580
Phone: 360-905-3380
E-mail
tara.carroll@greatwesternmalting.com

Sangeetha Ganesan
2 Maplewood Circle
Newark        DE        19711
Phone: (207) 590-7555
E-mail: sganesan56@gmail.com

Scott Roberts
777 Buena Vista Ave. West
San Francisco, CA 94117
Phone: (415) 602-4865
E-mail sroberts@linkedin.com

Marc Snyder & Emilie Choi
Attn: Marc Snyder
555 4th St. #107
San Francisco, CA 94107
Phone: (917) 749-7315
E-mail msnyder00@yahoo.com

MaltHandling.com, LLC
Attn: Marc Marashi
6355 N. Broadway
Suite 16
Chicago, IL 60660
Phone: 773-888-7718
E-mail marc@malthandling.com

Pooja Ganesan
111 S. 15TH Street
APT 1607
Philadelphia, PA 19102
Phone: (207) 590-7555
E-mail pganesan330@gmail.com

Postcard Communications
Attn: Olga Katsnelson
58 Maiden Lane - 3rd Floor
San Francisco, California 94108
Phone: 415-508-6727
E-mail olga@postcardcomm.com

Branthill Holdings LLC
Attn: Teddy Maufe
1824 Page Street
San Francisco, California 94117
Phone: 00 44 (0) 1328 71024
E-mail branthill.farms@gmail.com

**Secureds**
**Service via overnight mail and/or email**

FORA FINANCIAL WEST, LLC
242 W 36TH STREET
New York, NY 10018
accountspayable@forafinancial.com

ACH CAPITAL LLC
AS AGENT FOR CAP CALL LLC
11 BROADWAY, SUITE 814
New York, NY 10004

CORPORATION SERVICE COMPANY,
AS REPRESENTATIVE
P.O. BOX 2576
UCCSPREP@CSCINFO.COM
Springfield, IL 62708

EMPLOYMENT DEVELOPMENT
DEPARTMENT
PO BOX 826880
Sacramento, CA 94280

IRS / OAKLAND
1301 CLAY ST., STE 1000 S
Oakland, CA 94612

IRS/OHIO
P.O. BOX 145595
Cincinnati, OH 45250

OBDC SMALL BUSINESS FINANCE
825 WASHINGTON STREET, SUITE 200
Oakland, CA 94607

UNION BANK, N.A.
PO BOX 30115
Los Angeles, CA 90030

YELLOWSTONE CAPITAL WEST LLC
25 DEERWOOD DRIVE
Buffalo, NY 14221